ALEXANDER E. WOLF (SBN 299775)
awolf@milberg.com
**MILBERG COLEMAN BRYSON PHILLIPS**
**GROSSMAN, PLLC**
402 W. Broadway, Suite 1760
San Diego, CA 92101
Telephone: (858) 209-6941

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER ADAMS, individually and on behalf of all similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>GESHEM LLC, a Delaware limited liability company; and DOES 1 through 10,<br><br>Defendants. | Case No. **'24CV1147 BEN DDL**<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Jennifer Adams ("Plaintiff") brings this class action complaint individually and on behalf of all others similarly situated against GESHEM LLC and DOES 1 through 10 (collectively, "Defendants" or "Poly & Bark"). The allegations contained in this class action complaint are based on Plaintiff's personal knowledge of facts pertaining to herself and upon information and belief, including further investigation conducted by Plaintiff's counsel, as to the remainder.

I.     **NATURE OF THE ACTION**

1.     Defendants have violated California's "prohibition on advertising non-existent sales." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106 (9th Cir. 2013). "[P]rice advertisements matter." *Id.*

2.     This is a class action lawsuit brought to address Defendants' misleading and unlawful pricing, sales, and discounting practices on their website www.polyandbark.com. The products at issue are all goods that have at any time been offered on the website, at a sale or discounted price from a higher reference price. The products consist entirely (or almost entirely) of Poly & Bark's in-house furniture and decor. Defendants advertise false, misleading, and inflated reference prices to deceive customers into a belief that the sale price is a discounted bargain price.

3.     Anyone visiting the website who buys an item on "sale" from a former or regular price is being misled, including anyone who buys an item on sale using an automatically or manually applied coupon code. This is because that item has not been listed for sale or sold *on the website*, in the recent past and for a substantial time, at the regular price. Yet Defendants' use of inflated reference prices and purported limited time sales all lead reasonable consumers to believe that the products in fact had been listed for sale or sold on the website, at the former and regular price, in the recent past, for a substantial period of time.

4.     On information and belief, all or nearly all the reference prices on the website are false and misleading.  They are not former or regular prices at which the products were

offered on the website in the recent past for a substantial time.  They are inflated prices posted to lure consumers into purchasing items from Defendants.

5.    Beyond that, on information and belief, Defendants' products sold on the website not only have a market value lower than the promised former price, but the market value of the products is also lower than the discounted "sale" price.  By using false reference pricing and false limited time sales, Defendants artificially drive up demand for the products, and by extension drive up the price of the products. As a result, consumers received a product worth less than the price paid.  To illustrate, assume a company knows a product will sell in the marketplace at $30.  But to increase revenue and capture market share, the company advertises the product as having a regular price of $100 and being on "sale" at 60% off (i.e., $60 off).  Because consumers value products based on the regular price, and a purported limited-time sale conveys savings, the company can sell that $30 product for $40.

6.    As a result, consumers are deceived into spending money they otherwise would not have spent, purchasing items they would not have purchased, and/or spending more money for an item than they otherwise would have absent deceptive marketing.

## II.    PARTIES

7.    Plaintiff Jennifer Adams is a resident of the State of California and County of San Diego. She was present in San Diego County at the time she made her purchases from the website.

8.    Defendant Geshem LLC is, on information and belief, a Delaware limited liability company with its members each citizens of Delaware, Illinois, and/or Florida. On information and belief, it owns the Poly & Bark brand, and owns, operates, manages, and is responsible for sales through the website.  Poly & Bark is an online and furniture retailer. Through the website, Defendants sell their products to consumers in California and nationwide.

9.    On information and belief, at all times relevant to this Complaint, each of the Defendants herein, whether named or designated as a DOE, was an agent, servant, co-

3

conspirator, partner, joint venturer, wholly owned and controlled subsidiary and/or alter ego of each of the remaining Defendants, and was at all times acting within the course and scope of said agency, service, conspiracy, partnership and/or joint venture. On information and belief, Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance in accomplishing the wrongful conduct and their wrongful goals and other wrongdoing complained of herein.  In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful goals and conduct.

10.    Plaintiff further alleges, on information and belief, that all pricing, marketing, discounting, and sales decisions for the website, including the false and misleading sales and discounting practices alleged in this action, were made by each of Defendants, and such decisions were made at the direction of Geshem LLC and DOES 1 through 10.

## III.    JURISDICTION AND VENUE

11.    This Court has jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a proposed class action in which: (i) there are at least 100 class members; (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (iii) at least one putative class member and one Defendant are citizens of different states.

12.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.  As set forth herein, Defendants own and operate the website, and marketed, sold, and shipped products to purchasers located in this district, including at least one plaintiff.

13.    Further, as set forth herein, Defendants have contacts in this district sufficient to subject them to the personal jurisdiction of this district as if this district were a separate state. Each Defendant continuously and systematically places goods into the stream of

commerce for distribution in California, maintains an interactive commercial website, offers to ship products to California, and allows customers in California to order products. Exercising jurisdiction over each Defendant is fair, just, and reasonable considering the quality and nature of each Defendant's acts that occur in California and which affect interests located in California. Each Defendant has purposefully availed itself of the privilege of conducting activities in California, and should reasonably anticipate being haled into court in California.

## IV.    GENERAL ALLEGATIONS

### A.    Company Background

14.    Poly & Bark is a designer, manufacturer, and online retainer of furniture products. The company emphasizes the unique qualities of its offered products. According to Poly & Bark, its products offer a "one-of-a-kind look."[1] For example, regarding its leather products, "full grain hides showcase the animal's organic, lived-in imperfections and even markings from its contact with the environment. That's why no two are exactly alike—each piece is completely unique."[2]

15.    The www.polyandbark.com website is the primary and leading channel through which Defendants' products are sold. On information and belief, the website is the exclusive channel through which most products were sold.

16.    Defendants, through the website, have sold millions of units of merchandise to consumers in California and nationwide.

### B.    Defendants' False and Deceptive Pricing Scheme

#### 1.    The Products Are Not Regularly Listed or Sold on the Website at the Reference Prices

17.    Poly & Bark's business model relies on deceiving consumers with false or misleading sales.

---

[1] https://www.polyandbark.com/pages/product-care (last accessed July 2, 2024).
[2] Id.

18.    On any given date, all or nearly all products on the website are represented as being discounted from a substantially higher reference price. Specifically, Defendant advertises sitewide sales, or nearly sitewide sales. Defendant prominently displays on the landing page of the website some form of sale where the products are supposedly marked down by a specific percentage or dollar amount, for example, 20% off, using a product code, and will expire. But when one sale expires, another similar sale is promptly instituted, or the sale never ends. This cycle continues over and over.

19.    Examples of such sitewide sales are shown below.

**May 12, 2024**



**March 23, 2024**

The Spring home edit starts now! Take 20% OFF your order with code: SPRING (Terms apply).

**February 8, 2024**

Presidents' Day Sale! Save 20% off while stocks last, with code: PRESIDENT (Terms apply)

**January 4, 2024**

New Year, New decor! Take 24% off with code: 2024 (Terms apply)

**November 14, 2023**

Save BIG during the Black Friday Sale: Take 25% off with code: BF2023 (Terms apply)

CLASS ACTION COMPLAINT

### October 13, 2023

Fall in LOVE! 25% off at checkout with code: FALLSAVINGS (Terms apply)

### August 15, 2023

Early Bird LABOR DAY SALE! 25% off at checkout with code: LABORDAY23 (Terms apply)

### July 4, 2023



### June 29, 2023

Your special offer: get 10% off at checkout with July 4th Sale code: FREEDOM (Terms apply)

20.    Similarly, on individual product pages and product category pages, the products are advertised with a higher regular price and a lower discounted price accompanied by "Save $___" or "$__ off." Representative examples are below.



Capa Sofa
from $2,549
Save *$638* with code COLUMBUS

Paxton 24" Counter Stool
from $133 each *take $19 off* with code BFCM15



CLASS ACTION COMPLAINT

21.    Defendants employ these deceptive tactics to convey to customers that the product was listed or sold on the website at the reference price, in the recent past and for a substantial period of time, but is now being listed and sold to the customer at a substantial discount. In other words, reasonable consumers would understand that the sitewide coupon codes (which are often tethered to a holiday or event), the "Save $___," and the "$__ off," each independently convey that the product was listed or sold *on the website* at the reference price, in the recent past and for a substantial period of time, but is now being listed and sold to the customer at a substantial discount.

22.    Reasonable consumers also expect that the product was worth the higher reference price because it was purportedly offered on the website on a regular basis at that price.

23.    However, this reference price is a falsely inflated price because Defendants rarely, if ever, list or sell items on the website at the reference price. As a result, Defendants falsely convey to customers that they are receiving a substantial markdown or discount.

24.    This is not a new or isolated sales practice by Defendant, but continued regularly throughout at least 2024, 2023, 2022, 2021, 2020, and years earlier. Representative examples of Defendant's ongoing sitewide sales from 2023 and earlier are shown below.

**<u>May 30, 2023</u>**



## May 8, 2023



## February 3, 2023

Save $90 with Final Sale code
LOVEPB

## June 29, 2022

4TH OF JULY SALE: 10% OFF SITEWIDE, PLUS AN EXTRA 5% OFF SOFAS, SECTIONALS, LOVESEATS AND SOFA BEDS. USE CODE 1776 AT CHECKOUT.

## November 25, 2022



## October 7, 2022

Columbus Day Sale STARTS NOW! 10% off + EXTRA 5% off with code "1492".

9

25.     There are many examples of individual products remaining on sale for extended periods. For instance, on September 23, 2023, the Calle 75" Apartment Sofa was advertised with a sale price of $2,095 and reduced to $1,571 with the code "FALLSAVINGS." As of June 1, 2024, the product remains on sale with a reference price of $2,157 and a sale price of $1,726 with code "MEMORIAL."

**September 23, 2023**                    **June 1, 2024**




Calle 75" Apartment Sofa          Calle 75" Apartment Sofa
$2,095                             $2,157
*Save $524 with code FALLSAVINGS*     *$1726 with code MEMORIAL*

26.     As another example, on September 23, 2023, the Napa Velvet Sofa was advertised with a reference price of $1,429 and a sale price of $358 with code "FALLSAVINGS." As of June 1, 2024, the product remains on sale with a reference price of $1,343 and a sale price of $1,075 with code "MEMORIAL."

**September 23, 2023**                    **June 1, 2024**




Napa Velvet Sofa                  Napa Velvet Sofa
from $1,429                        from $1,343
*Save $358 with code FALLSAVINGS*     *$1075 with code MEMORIAL*

10

27.     Similarly, as of October 13, 2023, the Capri Sofa was advertised with a reference price of $1,749 and a sale price of $1,311 with code "COLUMBUS." As of June 1, 2024, the product is still on sale with a reference price of $1,644 and a sale price of $1,316 with code "MEMORIAL."

**October 13, 2023**          **June 1, 2024**




Capri Sofa
$1,749
*Save $438* with code COLUMBUS

Capri Sofa
$1,644
*$1316* with code MEMORIAL

**2.      The Reference Prices are not the Market Price of the Products, Including During the Rolling 90-Day Period Prior to Offering**

28.     Separately, Defendant cannot claim that the reference price for all products is the prevailing market price of the products.

29.     The website is the primary and leading channel through which Poly & Bark's in-house branded products are sold, and these products are always or almost always offered by Poly & Bark at a discount. Accordingly, the market price for Poly & Bark's in-house branded products is the website's discounted offering price—not the fictitious reference price.

30.     To the extent (if any) competing retailers sell the identical products offered by Defendants, on information and belief, Defendants' advertised reference prices are unsubstantiated and based on an undisclosed formula, or are outdated, or are cherrypicked and thus not representative of the prevailing market prices. On information and belief, Defendants do not independently verify that the reference prices are the prevailing market prices at which the products are listed for sale by other retailers for a substantial period of

time and in substantial quantities.  On information and belief, Defendants do not update the references prices on a daily basis.

31.    On information and belief, Defendants' advertised reference prices are higher than the prevailing market prices for the identical products. Because Defendants consistently sells the products at issue at prices significantly (i.e., 20% or more) lower than its advertised former prices, there is no reasonable basis to believe that Defendants consistently sell their products at prices below the prevailing market prices. In competitive markets, the actual prices offered by vendors selling the same item tend to converge on the market price.

**C.    Plaintiff's Purchase from the Website**

32.    On January 21, 2023, Plaintiff Adams visited the website and purchased a set of three Paxton 24" Counter Height Stools. Based on and consistent with archived copies of the website, Plaintiff saw on the website's homepage a sitewide promotion of "10% off . . . with code NY23." Indeed, archived copies of the website's homepage dated January 3, 2023 and January 28, 2023 (shortly before and after Plaintiff's purchase) depict the following banner advertisement:



33.    Further, based on and consistent with archived copies of the website, Plaintiff saw on the product listing page the former or regular price of $329 and the statement "take $33 off with code NY23." She then proceeded to purchase the product with the understanding that she was receiving all advertised discounts off the former and regular prices charged by Defendants.  She paid $296.10 for the product before tax.

34.    As of July 1, 2024, the product is still on sale, now with a reference price of $299, and a sale price of $240 using the 20% off coupon code JULY4TH.

35.    On June 4, 2023, Plaintiff Adams visited the website and purchased three sets of two Paxton Dining Chairs. Based on and consistent with archived copies of the website, Plaintiff saw on the website's homepage a sitewide promotion of "10% off . . . with code HONOR."

36.    Further, based on and consistent with archived copies of the website, Plaintiff saw on the product listing page the former or regular price of $229 and the statement "take $23 off with code HONOR" or similar. She then proceeded to purchase the products with the understanding that she was receiving all advertised discounts off the former and regular prices charged by Defendants. She paid $618.30 for the products (three sets of two chairs) before tax and received an alleged discount of $68.70.

37.    Plaintiff thus viewed and relied on the website's purported current and limited-time sale promotions. She relied on the above representations that the products (1) had a former and regular price of the stated reference price, and (2) had been offered for sale *on the website* at the stated reference price, in the recent past, on a regular basis and for a substantial time. And she relied on the representations that the products were truly on sale as being sold at a substantial discount for a limited time.

38.    The above-listed products Plaintiff purchased were not substantially marked down or discounted, and any discount she was receiving had been grossly exaggerated.

39.    For at least the 90-day period prior to Plaintiff's purchases, and months and years more, Defendants very rarely, if ever, offered any of the discounted items sold on its website at the reference prices.

40.    Plaintiff would not have purchased the items at the advertised prices, or would not have paid as much as she did, had Defendants been truthful. Plaintiff was persuaded to make her purchases because of the misleading sale based on false reference prices.

41.    Plaintiff continues to be interested in purchasing home furnishings and décor like that offered by Defendants at discounted prices, but she will be unable to trust and rely on Defendants' advertising, and so will not purchase the products from Defendants.

CLASS ACTION COMPLAINT

Absent injunctive relief, Plaintiff cannot know whether Defendants' former and regular prices represent honest prices at which the products were listed for sale on the website, on a regular basis for a reasonably substantial period of time, or if Defendants' sales are perpetual. Nor can she readily ascertain the prevailing market price in the preceding months.

### D.     Research Shows That Reference Price Advertising Influences Consumer Behavior and Perceptions of Value

42.     Academic studies support the effectiveness of Defendants' deceptive pricing scheme.

43.     "By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product."[3] Thus, "empirical studies indicate that, *as discount size increases, consumers' perceptions of value and their willingness to buy the product increase, while their intention to search for a lower price decreases*."[4] Indeed, the Ninth Circuit observed that "[m]isinformation about a product's 'normal' price is . . . significant to many consumers in the same way as a false product label would be." *Hinojos*, 718 F.3d at 1106.

44.     "[D]ecades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal."[5] According to academic studies, "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high."[6]

45.     Another academic journal explains that "[r]eference price ads strongly influence consumer perceptions of value . . . . Consumers often make purchases not based

---

[3] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. Pub. Pol'y & Mktg. 52, 55 (Spring 1992).

[4] *Id.* at 56 (emphasis added).

[5] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Believe It Or Not*, J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002).

[6] *Id.*

on price but because a retailer assures them that a deal is a good bargain. This occurs when . . . the retailer highlights the relative savings compared with the prices of competitors . . . [T]hese bargain assurances (BAs) change consumers' purchasing behavior and may deceive consumers."[7]

46.    "[R]esearch has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions."[8]

47.    "[R]eference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product."[9]  This study also concluded that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price."[10]

48.    Accordingly, research confirms that deceptive advertising through false reference pricing is intended to, and does, influence consumer behavior by artificially inflating consumer perceptions of an item's value and causing consumers to spend money they otherwise would not have, purchase items they otherwise would not have, and/or purchase products from a specific retailer.

**E.    Consumers Suffered Economic Harm**

49.    Consumers paid a "price premium" for the products.  If the reference prices, alleged discounts, and temporary coupon codes were omitted from the website, then consumers would not have paid as much as they did for the products (or would not have

---

[7] Joan Lindsey-Mullikin & Ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. of Bus. Research 67 (January 2011).

[8] Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of External Reference Price On Consumer Price Expectations*, 79 J. of Retailing 225 (2003).

[9] Jerry B. Gotlieb & Cyndy Thomas Fitzgerald, An Investigation Into the Effects of Advertised Reference Prices On the Price Consumers Are Willing To Pay For the Product, 6 J. of App'd Bus. Res. 1 (1990).

[10] *Id.*

purchased the products), and Defendants would not have been able to charge the prices they ultimately did.

50.     Defendants' discounted products sold on the website have a market value lower than the promised former and regular price, and as a result, consumers were harmed. As explained above, the reference prices are false and the products rarely, if ever, offered or sold at the reference price on the website.

51.     Additionally, Defendants' products sold on the website not only have a market value lower than the promised regular price, but the value of the products is also lower than the "sale" price.  By using false reference pricing and false limited time sales, Defendants artificially drive up demand for the products, and by extension drive up the price of the products. As a result, consumers received a product worth less than the price paid.  Reasonable consumers would not have paid the prices charged had they known that the products were rarely, if ever, offered for sale on the website at the reference prices.

52.     Again, an example illustrates the point.  Assume a company knows a product will sell in the marketplace at $30.  But to increase revenue, the company advertises the product as having a "regular" price of $100 and being on "sale" at 60% off (i.e., $60 off). Because consumers value products based on the regular price, and a sale conveys additional savings, the company can sell that $30 product for $40. Defendants have done so.

**F.      Defendants' Deceptive Pricing Practice Violates Federal Law**

53.     The Federal Trade Commission Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce[.]" 15 U.S.C. § 45(a)(1). Under FTC regulations, false former pricing schemes like the ones employed by Defendant are deceptive practices that violate the FTCA.

54.     Pursuant to 16 C.F.R. § 233.1, entitled Former Price Comparisons:

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the **former price** is the actual, bona fide price at which the article was offered to the public on a

*regular basis* for a ***reasonably substantial period of time***, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an ***artificial, inflated price*** was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a ***reasonably substantial period of time***, in the ***recent***, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

(c) The following is an example of a price comparison based on a fictitious former price. John Doe is a retailer of Brand X fountain pens, which cost him $5 each. His usual markup is 50 percent over cost; that is, his regular retail price is $7.50. In order subsequently to offer an unusual "bargain," Doe begins offering Brand X at $10 per pen. He realizes that he will be able to sell no, or very few, pens at this inflated price. But he doesn't care, for he maintains that price for only a few days. Then he "cuts" the price to its usual level—$7.50—and advertises: "Terrific Bargain: X Pens, Were $10, Now Only $7.50!" ***This is obviously a false claim***. The advertised "bargain" is not genuine.

(d) Other illustrations of fictitious price comparisons could be given. An advertiser might use a price at which he ***never offered the article at all***; he might feature a price which was ***not used in the regular course of business***, or which was ***not used in the recent past*** but at some ***remote period in the past***, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was ***not maintained for a reasonable length of time***, but was immediately reduced.

55.    The FTCA also prohibits the pricing scheme employed by Defendants regardless of whether the product advertisements and representations use the words "regular," "original," or "former" price.  Under 16 C.F.R. § 233.1:

(e) If the former price is set forth in the advertisement, ***whether accompanied or not*** by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one. If the

former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the ad merely states, "Sale," the advertiser must take care that the amount of reduction is not so insignificant as to be meaningless. It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An advertiser who claims that an item has been "Reduced to $9.99," when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater, and not merely nominal, reduction was being offered.

56.    The FTCA also prohibits retailers from offering fake limited duration sales. See 16 C.F.R. § 233.5 which provides:

[Retailers] should not represent that they are selling at "factory" prices when they are not selling at the prices paid by those purchasing directly from the manufacturer.

…

They should not offer an advance sale under circumstances where they do not in good faith expect to increase the price at a later date, or make a 'limited' offer which, in fact, is not limited.

**G.    Class Action Allegations**

57.    Plaintiff brings this action on behalf of herself and all persons similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure and seeks certification of the following class and subclass:

**California Class:**
All persons in California who purchased one or more items from www.Polyandbark.com, during the Class Period, at a discount from a higher reference price.

58.    The California Class is referred to as the "Class." Excluded from the Class are the Defendants, the officers and directors of the Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which any Defendant has or had a controlling interest.  Also

excluded from the Class are persons or entities that purchased products from Defendants for purposes of resale.

59.     The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, discovery, concealment, and accrual issues, and ending on the date of entry of judgment.[11]

60.     Plaintiff reserves the right to expand, limit, modify, or amend the class definitions stated above, including the addition of one or more subclasses, in connection with a motion for class certification, or at any other time, based upon, among other things, changing circumstances, or new facts obtained during discovery.

61.     **Numerosity.** The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but on information and belief, Plaintiff alleges that there are in excess of 5,000 members of the Class.

62.     **Typicality.** Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendants' course of conduct as described herein.

63.     **Adequacy of Representation.** Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiff and her counsel intend to diligently prosecute this action.

64.     **Existence and Predominance of Common Questions of Law or Fact.** Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal

---

[11] The Class Period begins at minimum 4 years from the date of filing of this action, but based on tolling, may extend beyond that date.

and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

    a.  Whether, during the Class Period, Defendants advertised false reference prices on products offered on the website.

    b.  Whether, during the Class Period, Defendants advertised price discounts from false reference prices on products offered on the website.

    c.  Whether the products listed on Defendants' website during the Class Period were offered at their reference prices for any reasonably substantial period of time prior to being offered at prices that were discounted from their reference prices.

    d.  Whether Defendants' deceptive pricing scheme using false reference prices constitute an "unlawful," "unfair," or "fraudulent" business practice in violation of the California Unfair Competition Law, Cal. Bus & Prof. Code § 17200, et seq.

    e.  Whether Defendants' deceptive pricing scheme using false reference prices constitutes false advertising in violation of the California False Advertising Law under Business & Professions Code § 17500, et seq.

    f.  Whether Defendants' use of false reference prices on products offered on their website during the Class Period was material.

    g.  Whether Defendants had a duty to conspicuously disclose to customers that the reference prices were false former/regular prices.

    h.  Whether the members of the Class are entitled to damages and/or restitution.

    i.  Whether injunctive relief is appropriate and necessary to enjoin Defendants from continuing to engage in false or misleading advertising.

    j.  Whether Defendants' conduct was undertaken with conscious disregard of the rights of the members of the Class and was done with fraud, oppression, and/or malice.

65. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Requiring each individual class member to file an individual lawsuit would unreasonably consume the amounts that may be recovered. Even if every member of the Class could afford individual litigation, the adjudication of at least tens of thousands of identical claims would be unduly burdensome to the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the members of the Class. Each Plaintiff anticipates no difficulty in the management of this action as a class action. The prosecution of separate actions by individual members of the Class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

66. **Substantial Similarity**. The products at issue in the action are substantially similar in all material respects.  Namely, the products were all advertised with a false reference price, a percentage or dollar discount, a false sale price, and were the subject of sitewide coupon codes.  The products are also all sold by Defendants on the website and fall under the umbrella of home furnishings and decor.

CLASS ACTION COMPLAINT

## V.    TOLLING OF THE STATUTE OF LIMITATIONS AND DELAYED DISCOVERY

67.    All applicable statutes of limitations have been tolled by the delayed discovery doctrine.  Plaintiff and Class members could not have reasonably discovered Defendants' practice of running perpetual sales, based on deceptive reference prices and deceptive sale prices, at any time prior to commencing this class action litigation.

68.    A reasonable consumer viewing the website on multiple occasions would simply believe that a product is on sale for the time period represented on the website. Short of visiting and checking the website daily for many months, a reasonable consumer would not suspect that Defendants' sales and pricing practices were false and misleading. Nor would a reasonable consumer be able to ascertain the market value of the products being sold absent extensive investigation.

69.    Plaintiff did not learn of Defendants' deceptive pricing practices alleged herein until shortly before commencing this action.

70.    As a result, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FIRST CAUSE OF ACTION

## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200, et seq.)

## (On Behalf of the California Class)

71.    Plaintiff restates the preceding allegations as if set forth herein.

72.    California Business and Professions Code section 17200 et seq., known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any "unfair or fraudulent business act or practice" as well as "unfair, deceptive, untrue or misleading advertising."

***Fraudulent***

73.    Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public.

74.    Reasonable consumers are likely to be deceived by Defendants' conduct as alleged above.  Defendants affirmatively misrepresented the reference prices of products which, in turn, misled and deceived consumers into believing that they were buying products at substantially discounted prices.   Defendants' deceptive marketing gave consumers the false impression that its products were regularly listed or sold on the website for a substantially higher price.

75.    Defendants' representations that its products were on sale, that the sale was limited in time, that the products had a specific former and regular price, and that consumers were receiving discounts, were false and misleading.

76.    Defendants had a duty to disclose the truth about their pricing deception, including that the reference prices advertised on its website were not, in fact, prices at which the items were listed or sold on the website in the recent past for a reasonably substantial period of time, but in truth, the items never (or rarely) were offered or sold at the reference prices. Reasonable consumers were likely to be deceived by this material omission.

77.    Defendants' conduct was and continues to be fraudulent because it has the effect of deceiving consumers into believing they are receiving a product that is worth more than it actually is, by presenting a fake sale price.

78.    Defendants' representations were materially misleading to Plaintiff and other reasonable consumers. Consumers are heavily influenced by price, including significant price reductions of purported limited duration, as employed by Defendants' high-pressure sales tactics.

79.    Plaintiff relied on Defendants' misleading representations and omissions, as detailed above, believing that she was receiving a genuine discount of limited duration from a prevailing and genuine regular and former price.

80.    Absent Defendants' misrepresentations, Plaintiff and the Class would not have purchased the items they purchased from Defendants, or, at minimum, they would

not have paid as much for the items as they ultimately did. Plaintiff and the Class's reliance was a substantial factor in causing them harm.

81.     Had the omitted information been disclosed, Plaintiff would have been aware of it and reasonably would have behaved differently. Among other things, Plaintiff would not have purchased the items she purchased from Defendants, or, at minimum, would not have paid as much for the items as they did.

82.     As a result of Defendants' fraudulent business acts and practices, Defendants have and continue to fraudulently obtain money from Plaintiff and members of the Class.

***Unfairness***

83.     Under the UCL, a business act or practice is "unfair" if its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

84.     Defendants' deceptive marketing gave consumers the false impression that their products were regularly listed or sold on the website for a substantially higher price in the recent past than they were and, thus, led to the false impression that Defendants' products were worth more than they were.

85.     Defendants' conduct was and continues to be of no benefit to reasonable consumers. It is misleading, unfair, unlawful, and is injurious to consumers. It is also against public policy, as it harms fair competition. For example, the federal Lanham Act includes prohibitions on "commercial advertising or promotion" that "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 41 U.S.C. § 1125(a). Similarly, the FTCA and implementing regulations prohibit advertising a former price "for the purpose of establishing a fictitious [] price on which a deceptive comparison might be based" (16 C.F.R. § 233.1) and prohibit "offer[ing] an advance sale under circumstances where they do not in good faith expect to increase the price at a later date" (16 C.F.R. § 233.5). Each Defendant is siphoning sales away from sellers who compete fairly on price and do not

promote fake former prices and fake sales of limited duration. Further, there is no benefit to consumers who pay a sale price that is actually a regular price.

86.     The harm to Plaintiff and members of the California Class outweighs the utility of Defendants' practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the unfair conduct described herein.

87.     As a result of Defendants' unfair business acts and practices, Defendants have and continues to unfairly obtain money from Plaintiff and members of the proposed Class.

***Unlawful***

88.     A cause of action may be brought under the "unlawful" prong of the UCL if a practice violates another law. Such action borrows violations of other laws and treats these violations as unlawful practices independently actionable under the UCL.

89.     By engaging in false advertising, as well as the false, deceptive, and misleading conduct alleged above, Defendants engaged in unlawful business acts and practices in violation of the UCL, including violations of state and federal laws and regulations.  Specifically, as detailed herein, Defendants violated 16 C.F.R. §§ 233.1 and 233.5, and California Business & Professions Code sections 17501.

                              *          *          *

90.     In the alternative to those claims seeking remedies at law, Plaintiff and class members allege that there is no plain, adequate, and complete remedy that exists at law to address Defendants' unlawful and unfair business practices. The legal remedies available to Plaintiff are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also United States v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("'The mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief."); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a

perfect manner at the present time and not in the future."). For example, equitable claims may be tried by the court, whereas legal claims are tried by jury, and the need for a jury trial may result in delay and additional expense. Additionally, unlike damages, the Court's discretion in fashioning equitable relief is very broad and can be awarded in situations where the entitlement to damages may prove difficult. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 177-180 (2000) (restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred."). Thus, restitution would allow recovery even when normal consideration associated with damages would not. *See, e.g., Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 68 (2007) (noting that restitution is available even in situations where damages may not be available). Furthermore, the standard, showing, and necessary elements for a violation of the UCL "unlawful" and "unfair" prongs are different from those that govern legal claims.

91. Plaintiff, on behalf of herself and the members of the Class, seeks restitution and restitutionary disgorgement of all moneys received by Defendants through the conduct described above.

92. Plaintiff, on behalf of herself and the members of the Class, seeks an injunction from this Court prohibiting Defendants from engaging in the patterns and practices described herein, including putting a stop to the deceptive advertisements and false reference prices in connection with the sale of products on the website. Plaintiff and Class members are entitled to injunctive relief. On information and belief, the dissemination of Defendants' false and misleading advertising is ongoing.

## SECOND CAUSE OF ACTION

## VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, CAL. BUS. & PROF. CODE § 17500, et seq.

## (On Behalf of the California Class)

93. Plaintiff restates the preceding allegations as if set forth herein.

94.     The California False Advertising Law, codified at California Business & Professions Code section 17500, et seq. (the "FAL") provides, in relevant part, that it is unlawful for any business, with intent directly or indirectly to dispose of personal property, to make or disseminate in any "manner or means whatever, including over the Internet, any statement, concerning that . . . personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]" Cal. Bus. & Prof. Code § 17500. The "intent" required by section 17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

95.     A separate section of the FAL, Cal Bus. & Prof. Code § 17501, provides:

For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

No price shall be advertised as a *former price* of any advertised thing, unless the alleged former price was the *prevailing market price* as above defined within *three months next immediately preceding* the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

96.     As used in Cal Bus. & Prof. Code § 17501:

- The term "prevailing market price" refers to the "retail [price] if the offer is at retail." *Id.*

- The term "advertised thing" refers to the exact same product offered—***not*** an equivalent or similar product. *People v. Superior Ct. (J.C. Penney Corp.)*, 34 Cal. App. 5th 376, 412 (2019) ("if the advertisement specifies a precise item—say, by reference to name, brand, or other distinctive features . . . the market and therefore the market price is potentially determined on the basis of sales of ***that item only***.") (emphasis added).

27

- The term "'former price' . . . includes but is not limited to the following words and phrases when used in connection with advertised prices; 'formerly—,' 'regularly—,' 'usually—,' 'originally—,' 'reduced from ___,' 'was ___ now ___,' '___ % off.'" 4 Cal. Code Regs., § 1301 (emphasis added).

- The "the three-month period is properly construed as a '*rolling*' period, that is, one whose beginning and end changes each day, thus requiring a *daily recalculation* of the prevailing market price during the three-month period." *People v. Superior Ct. (J.C. Penney Corp.)*, 34 Cal. App. 5th 376, 416 n.26 (2019) (emphasis added).

97.    Defendants violated Cal Bus. & Prof. Code § 17500.

98.    Defendants violated Cal Bus. & Prof. Code § 17501.

99.    As explained above, Defendants regularly disseminated false and misleading reference prices for the products offered for sale on the website, including to Plaintiff. Defendants rarely, if ever, offered products on the website at the reference prices within the three months immediately preceding the publication of the reference prices. Additionally, the reference prices shown were not the prevailing market prices for the products in the three months immediately preceding the publication.

100.    Defendants did not verify that the advertised reference prices were the prevailing market prices within the preceding three months. On information and belief, Defendants had no policies or procedures to verify and update the reference prices on a daily basis.

101.    Defendants' deceptive marketing practice gave consumers the false impression that their products were regularly offered and sold for a substantially higher price in the recent past than they were and, thus, led to the false impression that Defendants' products were worth more than they were.

102.    Defendants knew that its advertised reference prices for the products sold on its website were untrue and/or misleading. Defendants knew that such products had rarely, if ever, been offered or sold on the website at the reference prices.

103.   As a direct and proximate result of Defendants' misleading and false advertisements, Plaintiff and members of the Class have suffered injury in fact and have lost money. Plaintiff requests restitution and an injunction prohibiting Defendants from continuing its false and misleading advertising practices in violation of California law in the future.

104.   Plaintiff and Class members are entitled to injunctive relief. On information and belief, the dissemination of Defendants' false and misleading advertising is ongoing.

105.   In the alternative to those claims seeking remedies at law, Plaintiff and Class members allege that there is no plain, adequate, and complete remedy that exists at law to address Defendants' unlawful and unfair business practices. The legal remedies available to Plaintiff are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also United States v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("The mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief."); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future.").  For example, equitable claims may be tried by the court, whereas legal claims are tried by jury, and the need for a jury trial may result in delay and additional expense.  Additionally, unlike damages, the Court's discretion in fashioning equitable relief is very broad and can be awarded in situations where the entitlement to damages may prove difficult. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 177-180 (2000) (restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred."). Thus, restitution would allow recovery even when normal consideration associated with damages would not. *See, e.g., Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 68 (2007) (noting that restitution is available even in

situations where damages may not be available). Furthermore, the standard, showing, and necessary elements for a violation of the FAL under Cal Bus. & Prof. Code § 17501 are different from those that govern legal claims.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE § 1750, et seq.

### (On Behalf of the California Class)

106.    Plaintiff restates the preceding allegations as if set forth herein.

107.    The Consumer Legal Remedies Act, Cal. Civ. Code sections 1750 *et seq.* (the "CLRA"), is a California consumer protection statute which allows plaintiffs to bring private civil actions for "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction . . . which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).

108.    Plaintiff and each member of the Class are "consumers" as defined by California Civil Code section 1761(d). Defendants' sale of products on the website to Plaintiff and the Class were "transactions" within the meaning of California Civil Code section 1761(e). The products purchased by Plaintiff and the Class are "goods" within the meaning of California Civil Code section 1761(a).

109.    Defendants violated and continues to violate the CLRA by engaging in the following practices prohibited by California Civil Code section 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of Defendants' products:

    a.  Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions (Cal. Civ. Code § 1770(a)(13))

    b.  Advertising goods or services with intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9))

    c.  Misrepresenting that goods are of a particular standard, quality, or grade (Cal. Civ. Code § 1770(a)(7))

d.  Representing that goods do have characteristics they do not actually have (Cal. Civ. Code § 1770(a)(5))

110.  Regarding section 1770(a)(13), Defendants made false or misleading statements of fact concerning the "existence of" and the "amounts of price reductions" because (a) no true price reductions existed in that Defendants' merchandise was rarely, if ever, offered for sale and/or sold *on the website* at the higher reference prices, let alone on a regular basis for a reasonably substantial period of time, (b) the reference prices Defendants advertised in connection with its products are not prevailing market prices because, on information and belief, the products were not sold elsewhere at the reference prices for a reasonably substantial period of time, and (c) Defendants falsely represent the products as on sale for limited time when in truth a new substantially equivalent sale is promptly instituted after the expiration of an existing sale.

111.  With regards to section 1770(a)(9), (7), and (5), Defendants advertised and represented products on the website with the "intent not to sell" them as advertised and misrepresenting product characteristics and standard because, as explained herein, (a) the false reference prices advertised in connection with products offered on the website misled and continue to mislead customers into believing (i) the merchandise was previously offered for sale and/or sold *on the website* at the higher reference prices on a regular basis for a reasonably substantial period of time, and (ii) were valued in the market at the advertised "regular" price, and (b) Defendants falsely represent the products as on sale for limited time when in truth a new substantially equivalent sale is promptly instituted after the expiration of an existing sale.

112.  In addition, Defendants had a duty to conspicuously disclose the truth about their pricing deception, including that the reference prices advertised on the website were not prices at which Defendants' items were listed or sold on the website in the recent past on a regular basis for a reasonably substantial period of time, and in truth, Defendants' products are typically not offered or sold on the website (and/or in the marketplace) at the advertised reference prices. Defendants also failed to disclose that the expiration of any

given sale would be followed by a substantially equivalent sale.  Reasonable consumers were likely to be deceived by Defendants' failure to disclose material information.

113.    Plaintiff and the Class reasonably relied on Defendants' representations. Absent Defendants' misrepresentations, Plaintiff and the Class would not have purchased the items they purchased from Defendants, or, at the very least, they would not have paid as much for the items as they did. Plaintiff and the Class's reliance was a substantial factor in causing them harm.

114.    Had the omitted information been disclosed, Plaintiff and the Class reasonably would have been aware of it and behaved differently. Among other things, Plaintiff and the Class would not have purchased the items they purchased from Defendants or, at the very least, would not have paid as much for the items as they did.

115.    Plaintiff, through counsel, is providing notice to Defendants pursuant to Cal. Civ.  Code § 1782(a) via certified mail, but the 30-day response period has not elapsed. Thus, Plaintiff claims no damages pursuant to this count, but will timely amend this Complaint after expiration of the response period to seek money damages and punitive damages under the CLRA.  At this time, Plaintiff seeks only injunctive or other equitable relief under the CLRA as described above.

## FOURTH CAUSE OF ACTION

### FRAUD (INTENTIONAL MISREPRESENTATION AND OMISSION)

### (On Behalf of the California Class)

116.    Plaintiff restates the preceding allegations as if set forth herein.

117.    Plaintiff pleads this claim under California law.

118.    Defendants made false or misleading statements of fact concerning the existence of and the amounts of price reductions because, as explained herein, (a) the false reference prices advertised in connection with products offered on the website misled and continue to mislead customers into believing the products were previously offered for sale and/or sold *on the website* at the higher reference prices on a regular basis for a reasonably substantial period of time, and (b) Defendants falsely represent the products as on sale for

limited time when in truth a new substantially equivalent sale is promptly instituted after the expiration of an existing sale.

119.   In addition, Defendants had a duty to conspicuously disclose the truth about its pricing deception, including that the reference prices advertised on the website were not prices at which Defendants' items were listed or sold on the website in the recent past on a regular basis for a reasonably substantial period of time, and in truth, Defendants' products are typically not offered or sold on the website (and/or in the marketplace) at the advertised reference prices. Defendants also failed to disclose that the expiration of any given sale would be followed by a substantially equivalent sale.  Reasonable consumers were likely to be deceived by Defendants' failure to disclose material information.

120.   Defendants knew that their representations were false when made, or at the very least, were made recklessly and without regard for their truth. Defendants knew that the items Plaintiff and the Class purchased had rarely, if ever, been offered or sold on the website at the substantially higher reference price in the recent past.

121.   Defendants' representations were made with the intent that Plaintiff and the Class rely on the false representations and spend money they otherwise would not have spent, purchase items they otherwise would not have purchased, and/or spend more money for an item than they otherwise would have absent the deceptive marketing scheme.

122.   Defendants' conduct was made with the intent to maximize its profits at the detriment of reasonable consumers.

123.   Plaintiff and the Class reasonably relied on Defendants' representations. Absent Defendants' misrepresentations, Plaintiff and the Class would not have purchased the items they purchased from Defendants, or, at the very least, they would not have paid as much for the items as they ultimately did. Plaintiff and the Class's reliance was a substantial factor in causing them harm.

124.   Had the omitted information been disclosed, Plaintiff and the Class reasonably would have behaved differently. Among other things, they would not have

purchased the items they purchased from Defendants or, at the very least, would not have paid as much for the items as they ultimately did.

125. As a direct and proximate result of the above, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

126. Plaintiff and the Class are also entitled to punitive or exemplary damages. Defendants, individually and through their senior executives and officers, undertook the illegal acts intentionally or with conscious disregard of the rights of Plaintiff and the Class, and did so with fraud, malice, and/or oppression. Based on the allegations above, Defendants' actions were fraudulent because Defendants intended to and did deceive and injure Plaintiff and the Class. Based on the allegations above, Defendants' conduct was made with malice because Defendants acted with the intent to and did cause injury to Plaintiff and the Class, and because Defendants willfully and knowingly disregarded the rights of Plaintiff and the Class.

## FIFTH CAUSE OF ACTION

### UNJUST ENRICHMENT/QUASI-CONTRACT

### (On Behalf of the California Class)

127. Plaintiff restates the preceding allegations as if set forth herein.

128. Plaintiff pleads this claim under California law and in the alternative to her remaining claims.

129. California law permits a standalone claim for unjust enrichment, allowing the court to construe the cause of action as a quasi-contract claim. *Astiana v. Hain Celestial Group, Inc.,* 783 F.3d 753, 756 (9th Cir. 2015).

130. California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss. *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 599 (9th Cir. 2020).

131. California law requires disgorgement of unjustly earned profits regardless of whether a defendant's actions caused a plaintiff to directly expend his or her own financial

CLASS ACTION COMPLAINT

resources or whether a defendant's actions directly caused the plaintiff's property to become less valuable.

132.    Under California law, a stake in unjustly earned profits exists regardless of the plaintiff's actual loss.

133.    By their wrongful acts and omissions, Defendants were unjustly enriched at the expense of and to the detriment of Plaintiff and the Class and/or while Plaintiff and the Class were unjustly deprived. Defendants' unlawful and deceptive pricing scheme induced Plaintiff and the Class to spend money they otherwise would not have spent, purchase items they otherwise would not have purchased, and/or spend more money for a product than they otherwise would have absent the deceptive advertising.

134.    Plaintiff and members of the Class also conferred a monetary benefit on Defendants in the form of Defendants' profits generated by the deceptive marketing scheme.  Defendants profited from inappropriately and artificially inflated prices.

135.    On behalf of the Class, Plaintiff seeks restitution from Defendants and an order disgorging all payments and profits unfairly obtained by Defendants from Plaintiff and the Class.

136.    Plaintiff and the Class seek this equitable remedy because their legal remedies are inadequate. An unjust enrichment theory provides the equitable disgorgement of profits even where an individual has not suffered a corresponding loss in the form of money damages.

## SIXTH CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION
### (On Behalf of the California Class)

137.    Plaintiff restates the preceding allegations as if set forth herein.

138.    Plaintiff pleads this claim under California law.

139.    Defendants made false or misleading statements of fact concerning the existence of and the amounts of price reductions because, as explained herein, (a) the false reference prices advertised in connection with products offered on the website misled and

continue to mislead customers into believing the products were previously offered for sale and/or sold *on the website* at the higher reference prices on a regular basis for a reasonably substantial period of time, and (b) Defendants falsely represent the products as on sale for limited time when in truth a new substantially equivalent sale is promptly instituted after the expiration of an existing sale.

140.   Defendants had a duty to conspicuously disclose the truth about its pricing deception, including that (1) the reference prices advertised and published on the website were not prices at which Defendants' items had been offered and/or sold on the website in the recent past on a regular basis for a reasonably substantial period of time, (2) Defendants' products rarely (if ever) were offered or sold anywhere at the advertised reference prices on a regular basis for a reasonably substantial period of time, and (3) the expiration of any given sale would be followed by a substantially equivalent sale.

141.   Defendants knew or should have known that their representations were false when made. Defendants knew that the items Plaintiff and the Class purchased had rarely, if ever, been offered or sold on the website at the substantially higher reference price in the recent past.  Defendants knew their sales were falsely advertised as being of limited duration.  And Defendants knew or should have known that the reference prices were not the prevailing market prices.

142.   Defendants had no good faith or reasonable basis to believe that its representations were true when made.

143.   Defendants' representations were made with the intent that Plaintiff and the Class rely on the false representations and spend money they otherwise would not have spent, purchase items they otherwise would not have purchased, and/or spend more money for an item than they otherwise would have absent the deceptive marketing scheme.

144.   Defendants engaged in this fraud to the Plaintiff and the Class's detriment to increase Defendants' own sales and profits.

145.   Plaintiff and the Class reasonably relied on Defendants' representations. Absent Defendants' misrepresentations, Plaintiff and the Class would not have purchased

the items they purchased from Defendants, or, at the very least, they would not have paid as much for the items as they ultimately did. Plaintiff and the Class's reliance was a substantial factor in causing them harm.

146. Had the omitted information been disclosed, Plaintiff and the Class reasonably would have behaved differently. Among other things, they would not have purchased the items they purchased from Defendants or, at the very least, would not have paid as much for the items as they did.

147. As a direct and proximate result of the above, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully prays for following relief:

a. Certification of this case as a class action on behalf of the proposed Class and any subclasses defined above, appointment of each Plaintiff as Class representative, and appointment of their counsel as Class counsel;

b. An award to each Plaintiff and the proposed Class and subclasses of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits Defendants obtained from each Plaintiff and the proposed Class as a result of its unlawful, unfair and fraudulent business practices described herein;

c. An injunction ordering Defendants to cease the false advertising and unfair business practices complained of herein;

d. An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendants' conduct;

e. An award of nominal, punitive, and statutory damages where available;

f. Reasonable expenses and attorneys' fees;

g. Pre- and post-judgment interest, to the extent allowable; and

h. For such further relief that the Court may deem just and proper.

1

2 <u>**DEMAND FOR JURY TRIAL**</u>

3       Plaintiff, individually and on behalf of the proposed Class, demands a trial by jury

4 for all claims so triable.

5

6

7  Dated:  July 3, 2024                MILBERG COLEMAN BRYSON
                                       PHILLIPS GROSSMAN, PLLC
8

9                                      By: */s/ Alexander E. Wolf*
10                                          ALEXANDER E. WOLF
                                            Attorneys for Plaintiff
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT